In the Matter of ANGELA S. MORGAN, as Guardian of the Person of LEWIS McC. HERZOG, JR., an Infant, Appellant and Respondent. UNITED STATES TRUST COMPANY OF NEW YORK, Respondent. In the Matter of ANGELA S. MORGAN, as Guardian of the Person of ANGELA R. HERZOG, an Infant, Appellant and Respondent. UNITED STATES TRUST COMPANY OF NEW YORK, Respondent. ANGELA S. MORGAN, Respondent and Appellant, v. LEWIS McC. HERZOG, SR., Third-Party Appellant and Respondent, and SEYMOUR GRAUBARD, as Guardian ad Litem for LEWIS McC. HERZOG, JR., and Another, Third-Party Respondent.

Argued April 4, 1950; decided June 1, 1950.

*Sol Pottish* and *Harry L. Ettinger* for Lewis McC. Herzog, Sr., third-party appellant and respondent. I. The separation agreement and the trust indentures expressly provide that the trust income is to be payable and used for the support of the children. For that purpose the income should be paid to either parent in direct proportion to the time he or she has actual custody of and supports the children. The lower court's direction for suspension of the income injures the children. (*City Bank Farmers Trust Co.* v. *De St. Aubin,* 270 App. Div. 588; *Blake* v. *Mattern,* 186 App. Div. 488; *Farmers' Loan & Trust Co.* v. *Callan,* 246 N. Y. 481; *Matter of Buechner,* 226 N. Y. 440; *Robertson* v. *Ongley Elec. Co.,* 146 N. Y. 20; *Matter of Bearns,* 251 App. Div. 222; *Rice* v. *Halsey,* 156 App. Div. 802, 215 N. Y. 656.) II. The court is not foreclosed from ordering payment of the income to the father for the support of the children by virtue of the naked provision in the agreements that the income is payable to the mother. She is a mere subtrustee and an equity court is empowered to by-pass her and to direct payment of the income in such a way as will effectuate the purpose of the trusts. (*Wood* v. *Duff-Gordon,* 222 N. Y. 88; *Oberndorf* v. *Farmers' Loan & Trust Co.,* 208 N. Y. 367; *Lawrence* v. *Lawrence,* 220 App. Div. 307; *Chase* v. *Chase,* 84 Mass. 101; *Noble's Appeal,* 39 Pa. 425; *Allen* v. *Farmers' Loan & Trust*

*Co.,* 18 App. Div. 27.) III. The Florida decree is a binding adjudication of the father's right to receive the trust income while the children are in his custody. IV. If the lower court correctly held that the trust income should be suspended and accumulated, there has been a failure of the express purpose of the trusts. Therefore a resulting trust would arise in favor of the father as settlor and the income would be payable to him. (4 Pomeroy's Equity Jurisprudence [5th ed.], § 1031; 1 Perry on Trusts [7th ed.], § 160; *Guaranty Trust Co.* v. *New York Trust Co.,* 297 N. Y. 45; *Allen* v. *Farmers' Loan & Trust Co.,* 18 App. Div. 27.)

*Ambrose V. McCall* and *Eugene L. Garey* for Angela S. Morgan, respondent and appellant. I. Respondent trust company should be directed to pay income to petitioner as guardian of the persons of the beneficiaries thereof as required by the clearly expressed language of the trust indentures. (*Matter of Taylor,* 234 App. Div. 892, 260 N. Y. 527; *Heller* v. *Pope,* 250 N. Y. 132; *Central Union Trust Co.* v. *Trimble,* 255 N. Y. 88; *Matter of Tamargo,* 220 N. Y. 225; *Manion* v. *Peoples Bank of Johnstown,* 292 N. Y. 317; *Matter of Lloyd,* 292 N. Y. 280.) II. The Florida court was without jurisdiction and the provisions of the Florida decree both as to custody and trust income should not have affected the lower court's construction of these instruments. (*People ex rel. Kniffin* v. *Knight,* 184 Misc. 545; *Balais* v. *Brady & Gioe,* 189 App. Div. 408, 228 N. Y. 507.)

*Seymour Graubard,* third-party respondent in person. I. The trust income may be received only by the guardian of the persons of the children and may be applied solely for their benefit. (*Matter of Farmers' Loan & Trust Co.,* 123 Misc. 600; *Garlock* v. *Vandevort,* 128 N. Y. 374; 2 Warren's Heaton on Surrogate's Courts, § 209, par. 2[c]; *Matter of Lee,* 220 N. Y. 532; *Matter of Thoemmes,* 238 App. Div. 541.) II. The mother is not entitled to receive the trust income except to the extent that she is able to apply such income to the support and maintenance of the children. (*Chase* v. *Chase,* 84 Mass. 101; *Industrial Trust Co.* v. *Nolan,* 63 R. I. 156; 4 Bogert on Trusts & Trustees, § 812; *Matter of Taylor,* 252 N. Y. 218, 615.) III. Payment of the trust income to the father would be detrimental to the children's interests. IV. Accumulation of the income for

the benefit of the children meets the intent of the trust indentures. It does not constitute a failure of the express trust, and no resulting trust in the father's favor arises thereon.

*James J. Mennis* for United States Trust Company of New York, respondent.

DYE, J. In this proceeding, which is here on cross appeals, we are to construe the payment provisions of two trust indentures executed by the settlor, Lewis McComb Herzog, Sr., coincident with an agreement of separation entered into between him and his then wife, Angela Stevenson Morgan, petitioner-appellant. The trust indentures bear even date, are identical in terms and were created for the purpose of securing covenants for the separate support of the wife and infant issue of the marriage, as provided in the separation agreement. Before proceeding to a discussion of the controverted payment clause, certain undisputed facts should be mentioned.

Petitioner-appellant and respondent-appellant were married in New York City, June 7, 1928. The daughter, Angela, was born in 1930 and the son, Lewis, Jr., in 1932. Unhappy differences developed leading to a separation and the execution of the aforementioned agreement of separation under date of June 28, 1933. This agreement made provision for a financial settlement which, briefly, provided the sum of $5,000 per annum payable monthly for the wife's separate support until she remarried, and the sum of $2,500 payable in monthly installments to the wife for the maintenance, education and support of each of the infant children during minority except that, when the children were in the custody of the father, payments to the wife were to cease except for a proportionate rental value of the home maintained by her for herself and the children. To secure these payments three separate trusts in the principal sum of $125,000 each were established, one for the wife with which we are not concerned (for it terminated upon the remarriage of the wife in 1938, and its principal was added to the trusts for each of the children in equal shares) and two trusts equal in amount and identical in terms for the benefit of each of the children. It is these latter two trust deeds that have our attention. The United States Trust Company of New York was named trustee in each instrument.

Following the establishment of the trusts the wife was duly appointed guardian of the person, and the trust company was appointed guardian of the property, of each of the infants. Such appointments continue in effect. In 1935, the wife instituted proceedings in Nevada for absolute divorce based on cruelty, in which the husband appeared by attorney. A valid decree of divorce was obtained which incorporated the terms of the prior separation agreement *in haec verba*.

Subsequently both parties remarried and are now living with their respective spouses, the petitioner in New York City, and the respondent in the State of Florida where he has established a legal residence and maintained his domicile since 1941. In 1940, the wife refused to allow the father custody of the children during the July-August vacation period, resulting in a habeas corpus proceeding instituted by the father which was eventually terminated in a ruling by this court to the effect that a modification of the custody provision of the prior agreement of separation was unwarranted (*People ex rel. Herzog* v. *Morgan*, 287 N. Y. 317). Prior to and subsequent to this ruling, from June 28, 1933, and down to July 1, 1945, the parties observed a condition of the separation agreement providing for income payments to the wife during the period she has custody of the children, approximately nine and one-half months of each year, and to the father for the vacation periods for the remainder of the time. In July, 1945, the children, then fourteen and twelve years of age, and at the time in the custody of the father at his home in Florida, pursuant to the separation agreement, decided not to return to the mother in New York, but elected to remain with the father in Florida. Because of the children's expressed preference to remain with him, the father instituted proceedings in the State of Florida for a modification of the custody arrangement and for payment of the trust income to him while he had custody. The wife, in various motions including a habeas corpus proceeding, attacked the jurisdiction of the Florida court and when all had been resolved against her, appeared generally in the action and controverted the issues at a trial. This resulted in a final judgment, modifying the custody provisions so that the position of the parties was reversed, the father being awarded the main custody for nine and one-half months and the mother for the vacation period of two and one-

half months of each year. The Florida court also ordered the wife to pay the trust income received by her to the father during the period he had custody. In the meantime the bank stopped all payments to anyone and has accumulated the income. The father has provided for the children's maintenance and support in what has been described as a lavish and extravagant manner.

The within separate proceedings were commenced by the wife as guardian of the person of each of the infant children, to construe the income payment provisions of the respective trust indentures for the benefit of each child and for other relief, including major custody. Her prayer for custody has been abandoned and only the payment provisions are now controverted on the ground that she is entitled to payments as guardian under the express terms of the trust indenture which may not be altered by any independent modification of the terms of the separation agreement, and on the further ground that it expressly provided that it was to be construed and administered under the laws of the State of New York. The husband, in his opposing answer, joins in the application for construction, urging that the payments should be made to him while the children are in his custody because the primary purpose of the trust indenture was to secure the financial settlement for the benefit of the children as provided in the separation agreement. The trust company, in its answer, also joins in the application for construction but remains otherwise neutral. The special guardian also filed an answer in which he too asked for a construction and incidental relief. The controverted provisions of the trust directed the trustee to hold, manage and collect the income and, after payment of all necessary expenses, "to pay the net income thereof to the extent of Two thousand five hundred (2,500) Dollars per annum during the minority of the said Lewis McComb Herzog, Jr. to Angela Stevenson Herzog in equal monthly instalments to be applied by her as guardian of the person for the maintenance, education and support of said Lewis McComb Herzog, Jr.; provided, however, that if the Grantor shall at any time be called upon to pay and discharge any debt or liability created or incurred by said Angela Stevenson Herzog for account of the said Lewis McComb Herzog, Jr., the Trustee shall out of said net income of Two thousand five hundred (2,500) Dollars reimburse the

Grantor for any payments so made as provided in said separation agreement, and so accumulate the balance of the said income until said Lewis McComb Herzog, Jr. attains the age of twenty-one years, and upon that event to pay over the said accumulated income to said Lewis McComb Herzog, Jr., provided, however, that there shall be paid by the Trustee out of said accumulated or surplus income, when sufficient for the purpose, all bills for school tuition, board and extras incurred in the education of the said Lewis McComb Herzog, Jr., which said bills shall be rendered to and paid by the Trustee and be subject to its supervision and control.

" After the said Lewis McComb Herzog, Jr. attains the age of twenty-one years, the Trustee shall pay the net income to him during his life in equal monthly instalments."

It is also provided that, upon the death of the son, Lewis, the corpus be paid over to whomever the son should appoint, or, if the power of appointment be not exercised, the corpus be paid to Angela (the daughter) in the event he leaves no issue or, if he leaves issue, then to the surviving issue per stirpes. The trust deed for the benefit of the daughter, Angela, uses identical language except for appropriate changes.

In the preamble of each trust indenture reference is made to the separation agreement " bearing even date " in which the grantor covenanted to make certain payments for the benefit of the infant (either Angela or Lewis, Jr.) and that he was desirous of securing said payments, etc. This, we believe, justifies reference thereto in our search for the answer to the construction problem. For convenience we turn to the separation agreement. It makes provision for the father's visitation while the children are in the custody of the mother at certain designated times and places and then provides: " During the months of July and August, or such parts thereof as he shall request, and during the period of the Easter school vacation if he shall so desire, the party of the first part [the father] shall have the right to have the care, custody and control of the said children and during the period of such custody, if requested by the party of the first part [the father], the fixed payments to be made to the party of the second part [the mother] for the support and maintenance of the said children shall cease except the proportionate part of the rental of the

home maintained by the party of the second part as a home for herself and said children, and during such period the party of the first part [the father] shall be entitled to apply to their maintenance and support the balance of the fixed income for such period which would ordinarily be payable to the party of the second part from the trust funds created for the benefit of said children.''

It also provided that in the event the father was called upon to pay and discharge any debt or liability incurred by the mother for the account of the children, the father was to be paid out of the income of the trust fund for the benefit of the child for whom such payment is made.

The lower court has construed the controverted provision of the trust deed to mean that monthly payment of the income derived from each trust to the extent of $2,500 shall be paid to the mother as guardian, in proportion '' to such time of each year as petitioner actually has custody '' and that any excess shall be accumulated for the benefit of the respective infant until he or she shall have attained his or her majority and tha⁺ no payments were to be made to the father.

The Appellate Division affirmed by a divided court, the dissenting Justices voting to modify so as to direct payment to the father of the sum of $2,500 for each of the minor children to be used by him for the support of the children, according to the separation agreement, for such time as he has their legal custody. We are in accord with the view expressed by the dissenting Justices below.

This is a construction problem. In resolving it primary attention must be given to the manifest purpose sought to be accomplished. When this is ascertained it will take precedence over all other canons of construction (*Farmers' Loan & Trust Co.* v. *Callan,* 246 N. Y. 481; *Matter of Buechner,* 226 N. Y. 440; *Robinson* v. *Martin,* 200 N. Y. 159; *Mullarky* v. *Sullivan,* 136 N. Y. 227). In seeking such purpose and intent we are not limited under the circumstances of this case to the language of the trust indenture. It must be read in connection with the separation agreement executed under even date. Both such instruments made reference to the other and together constitute part of a single financial plan '' instinct with obligation '' to provide a fixed monthly income for the support of the infant children

during minority, in lieu of and in complete satisfaction of the father's obligation in the premises. These instruments, as we read them, are not mutually exclusive in terms and obligations but are interrelated and being interdependent must be read together. Neither can successfully stand alone. If either is to be considered separately and one accorded a position of precedence over the other that precedence must be accorded to the separation agreement. Until it was executed there was no need for the creation of a trust. When created its express purpose was to furnish security for the unconditional performance by the settlor of his covenant to provide support for his infant children. The provisions of both instruments must be examined and, if necessary, read as one to ascertain the purpose and intent (65 C. J., Trusts, § 247, p. 500). Manifestly, there was but a single purpose — security for the children's support. This must be made effectual. Substance must not be destroyed in deference to the naked word (*Wood* v. *Duff-Gordon*, 222 N. Y. 88). The trust indenture directs the trustee to make income payments to the wife " to be applied by her *as guardian* * * * for the * * * support " of the infants. The wife had no individual interest in such payments. The husband's obligation for her separate support, pending remarriage, had been fully discharged in a separately created trust. Her position then " as guardian " is but an extension of the trustee's obligation to apply money for the benefit of the infant children. She was, for all intents and purposes, a subtrustee for the accomplishment of a single purpose. The word " guardian " under such circumstances need not be regarded as requiring unyielding obedience as the recipient of income payments. It is a mere word of designation of the person or party in position to carry out the primary cardinal purpose, which in either instance ostensibly means the support of the children while in the custody of either parent. The parties, as a matter of fact, have so construed the income payment provision from the date of execution of the separation agreement and the implementing trust indenture of 1933 down to July 1, 1945, by payments to the father when he had custody during the two and one-half months of the vacation period. This was in recognition of the income payment terms contained in the separation agreement — because a similar clause was not incorporated in the trust indenture is no reason for limiting its payment of income derived from

the trust to the mother as guardian. The parties placed a practical construction on the arrangement which may not be ignored. To say that the language of the underlying instrument is paramount and controlling over the primary agreement it was designed to implement is to exalt language over substance and work an unwarranted forfeiture of a clearly discernible purpose. It is axiomatic that the law does not favor forfeiture or penalties but strives to effectuate the purpose and intent which may be gathered not only from the instrument itself but from the circumstances surrounding its making and its expressed purpose and intent. The mere naked provision in the trust indenture requiring the trustee to pay the income to the mother as guardian must yield in the light of actual circumstances and in this instance custody is a very compelling circumstance. It is true that the parties failed to anticipate a change in custody — and in particular that such change would come about by the modification order of a court of competent jurisdiction after a trial of the issues. Nonetheless such has happened and the parties are bound by the Florida decree. We cannot disturb it and accordingly we must take it as we find it — a *modus operandi* between the parties governing the custody of the children. The Florida decree, however, in this instance, cannot operate to change the trustee's duties in the controverted trust indenture. Neither it nor the *res* were subject to the jurisdiction of the Florida court and its decree directing the mother to pay the father an appropriate amount of the trust income while he has custody of the children, insofar as the trustee is concerned, is without effect and it has so treated it by refusing to make payments to any one and, pending direction, has accumulated the income in both trusts. The valid modification of the custody provisions of the separation agreement has reversed the position of the parties — the father now having the major custody and that of the mother being limited to the vacation period. Obviously, the mother, as guardian, except for a limited period, cannot apply the trust income in the manner provided, nor does she claim that she is entitled to such payments on any basis except the single circumstance that the trust indenture designated payment to her as guardian and that her appointment as such has not been vacated. As we see it, the determinative factor is whether the income is to be available for the *cestuis.*

Authority is ample for the proposition that a court in the exercise of its equitable powers may control the administration of a trust so as to effectuate its avowed purpose, particularly when changing circumstances would otherwise defeat it (e.g., see authorities collected in 2 Scott on Trusts, § 167; 4 Pomeroy's Equity Jurisprudence [5th ed.], § 1309.). This trust was created by the father, out of his personal funds, in fulfillment of his obligation in the premises. Under such circumstances even though the father has ample means, as is the case here, to support said children without any need for the income derived from the trust, it nevertheless should be made available to him during the period of his custody irrespective of any other consideration. This is particularly so when infant beneficiaries are involved and the named recipient of the trust income refuses to apply the income as intended, or is in a position where she is unable to so apply it. In either case the purpose of the trust is nullified or thwarted, which eventuality the court will prevent by appropriating the income to the declared objective (*Oberndorf* v. *Farmers' Loan & Trust Co.*, 208 N. Y. 367). It is the avowed purpose of the payments rather than the method that is controlling.

The orders should be modified in accordance with the opinion herein, and as so modified affirmed, with costs to the respondent-appellant, Lewis McComb Herzog, Sr., payable out of the funds and the matter remitted to the Special Term for further proceedings not inconsistent with this opinion.

DESMOND, J. (dissenting). One question only is before us: is the income of the two trusts hereafter described to be paid, by the terms of the indentures and under the existing facts, to the father, or to the mother, or is such income to be accumulated for the benefit of the two infant beneficiaries? Despite much discussion in the record and briefs, about a separation agreement, and past litigations between the parties in this State and Florida, we are not here construing or applying that separation agreement, nor are we determining questions of custody or support, nor are we passing on the effect of, or bound by, the Florida judgment hereafter mentioned. The parties agree, on this appeal, that the case is, in its present form, a proceeding to construe two *inter vivos* trusts, and nothing more.

Petitioner Angela Stevenson Morgan and respondent Lewis McComb Herzog, Jr., were married in 1928, had two children born, respectively, in 1930 and 1932, and then, in 1933, signed a separation agreement. By that agreement the father agreed to pay the mother $2,500 per year for the support and maintenance of each child, the income from a trust created by the father for the benefit of that child to be, to the extent of such income, in full discharge of that support obligation. In another paragraph of the separation agreement it was recited that the father had set up a $125,000 trust fund, with respondent United States Trust Company as trustee, for each child, the income from the trusts to be received, as directed in the trust indentures, in discharge of the father's liabilities to his wife for the support of the children. Elsewhere in the separation agreement the mother accepted the foregoing arrangements in lieu of any other provision for the support of the children, and agreed to care for the children out of the income so provided for them, there being another direction as to payment of trust income to the father, in the event the mother should fail to pay any bills incurred by her for the children's needs. Finally, the mother was, by the separation agreement, given the custody of both children, and it was agreed that she was to be appointed guardian of the person of the children, the United States Trust Company to be the guardian of their property (such guardianship appointments were so made, and are still in effect). The father was, by the separation agreement, to have certain rights as to visiting the children, and was to have their custody during summer and Easter school vacation periods. In that part of the separation agreement it was stipulated that, when the children were thus with their father during their school holidays, the father's obligation to pay the mother for the children's maintenance should cease (except for rent) and that during such periods the trust income should go to the father. However, no such provisions appear in either trust.

The trust indenture for the son's benefit (that for the daughter is identical) contains a recital that under the separation agreement above summarized, the father had agreed to make certain payments to his wife for his son's support, and that the father is " desirous of securing the said payments " by the creation of this trust fund. Having thus made it clear

that the sole purpose of this trust was to guarantee the agreed annual payment, by father to mother, of $2,500 per year to be used by her for the boy's care, the trust document gave the following directions to the trustee: " to invest and reinvest the same, to collect and receive the income thereof and after the payment of all necessary expenses, to pay the net income thereof to the extent of Two thousand five hundred (2,500) Dollars per annum during the minority of the said Lewis McComb Herzog, Jr. to Angela Stevenson Herzog in equal monthly instalments to be applied by her as quardian of the person for the maintenance, education and support of said Lewis McComb Herzog, Jr.; provided, however, that if the Grantor shall at any time be called upon to pay and discharge, any debt or liability created or incurred by said Angela Stevenson Herzog for account of the said Lewis McComb Herzog, Jr., the Trustee shall out of said net income of Two thousand five hundred (2,500) Dollars reimburse the Grantor for any payments so made as provided in said separation agreement, and so accumulate the balance of the said income until said Lewis McComb Herzog, Jr. attains the age of twenty-one years, and upon that event to pay over the said accumulated income to said Lewis McComb Herzog, Jr., provided, however, that there shall be paid by the Trustee out of said accumulated or surplus income, when sufficient for the purpose, all bills for school tuition, board and extras incurred in the education of the said Lewis McComb Herzog, Jr., which said bills shall be rendered to and paid by the Trustee and be subject to its supervision and control."

Other language in the indenture provides for the payment, to the son after he shall attain his majority, of the whole net income during his life, and for the disposition of the remainder, after the son's death. The trust deed nowhere contains any direction for the payment of any of the income to the father (except when and if the mother fails to pay debts she has incurred on behalf of the infant, a situation which has not arisen). In other words, the father made an absolute transfer, to the trustee, of $125,000, with the command that the income be paid by the trustee to the mother, as guardian of the son, for the latter's support. By no conceivable method of construction or interpretation could such language be made to mean that

the father himself, not the mother, was to have the trust income. Nevertheless, the father now insists that such is his legal right, because of occurrences since the creation of the trusts.

In 1945, while the two children were visiting their father in Florida whither he had moved his residence in 1941 (the father and mother have been divorced and both are remarried), the father brought a custody proceeding in a Florida court, in which the mother appeared, and which resulted, in 1947, in a decree awarding the custody of the children to the father for nine and one-half months each year, the mother to have them during the summer. The Florida decree ordered also that the mother pay to the father, so much of the trust income as should be proportionate to the time he has the children. The trustee was not a party to that Florida litigation and its directions as to turning over the income could not, of course, have any effect on the trustee, or on the trusts. The father, however, called the trustee's attention to the Florida judgment, and the trustee refused thereafter to pay the income to either parent. The present proceeding was then begun by the mother. The courts below have made, and affirmed, an order which, so far as is here material, adjudges that it is the intent and meaning of the trusts that, during the minority of each child, the income derived from that child's trust, to the extent of $2,500 per year, shall be paid to the petitioner mother, as guardian of the person of that child, but only '' during and in proportion to such time of each year as petitioner actually has custody of said infant and to apply said sum for the maintenance, support and education of said infant, and, to the extent that it exceeds the amount so paid to petitioner, the same to be accumulated and applied by the trustee pursuant to the * * * trust indenture '', such accumulations to be paid to each infant, on reaching the age of twenty-one. Both father and mother have appealed therefrom to this court.

The courts below, called upon to construe these trusts, each of which directed that the trust income up to $2,500 per year be paid to the mother as guardian, with no direction of any sort that such income be paid to the father (except in the event of default of the mother in paying the children's bills), and faced with the fact that the child's custody, for nine and one-half months each year, is now with the father, have, by the

order here appealed from, held that, under such circumstances, the indentures give the mother the right to no more than two and one-half twelfths of the income, and give the father no corresponding right to the balance of income, which balance must, therefore, be accumulated for the children. We do not see how such an interpretation of the trusts could be held, as matter of law, to be erroneous.

To order payment of any part of the income to the father would be to write in something not found, expressly or impliedly in the deeds, and something the parties themselves, therefore, never intended. The language of the indentures, as to disposition of income, is clear and complete. So much for the father's appeal.

The mother's claim to the whole of the income is likewise untenable. The payments to her were for the children's, not for her own, benefit, and she is accordingly entitled to those payments only when, and to the extent, that she is in a position to use the money for the benefit of the children (see *Chase* v. *Chase,* 84 Mass. 101, 104). From all this it follows that, since the father is entitled to none of the income, and the mother to only a part thereof, the balance should be accumulated for the children, just as other surplus income was so to be accumulated, by the express language of the trusts.

The fact that the mother, in the years before the Florida litigation, paid over to the father part of the trust income, after she had received it from the trustee, could not operate to change, or add to, the plain language of the trust deeds.

It should be noted that this is not one of those cases, where, because of dire necessities of children, the courts may direct application of income to relieve those necessities, despite or beyond the provisions of trust instruments (see *Matter of Bostwick,* 4 Johns. Ch. 100; Personal Property Law, § 17).

The order should be affirmed, with costs to the third-party respondent (special guardian), and disbursements to the petitioner (mother) and respondent (father), payable out of the trust funds.

CONWAY, FULD and FROESSEL, JJ., concur with DYE, J.; DESMOND, J., dissents in opinion in which LOUGHRAN, Ch. J., and LEWIS, J., concur.

Ordered accordingly.